# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2060

_____

In re: Trism, Inc.; Trism Heavy Haul,   &ast;
Inc.; E.L. Powell & Sons Trucking Co.,  &ast;
Inc.; Trism Specialized Carriers, Inc.;  &ast;
Trism Special Services, Inc.; Trism   &ast;
Secured Transportation, Inc.; Diablo  &ast;
Systems, d/b/a Diablo Transportation,  &ast;
Inc.; Trism Eastern, d/b/a C.I.    &ast;
Whitten Transfer, Inc.; Tri-State Motor &ast;
Transit Co.; Aero Body and Truck   &ast;
Equipment, Inc.; Trism Logistics, Inc.; &ast;
Trism Equipment, Inc.; Trism    &ast;
Transport, Inc.; Trism Transport   &ast;
Services, Inc., as individual entities  &ast;
and as debtors in possession,   &ast;
           &ast;
    Debtors.     &ast;
_____  &ast;
           &ast;
Official Committee of Unsecured  &ast;
Creditors,       &ast;
           &ast;
    Appellant,    &ast;
           &ast; Appeal from the United States
   v.        &ast; Bankruptcy Appellate Panel for the
           &ast; Eighth Circuit.
Trism, Inc.; Trism Heavy Haul, Inc;  &ast;
E.L. Powell & Sons Trucking Co., Inc.; &ast;
Trism Specialized Carriers, Inc.; Trism &ast;
Special Services, Inc.; Trism Secured  &ast;
Transportation, Inc.; Diablo Systems, &ast;
d/b/a Diablo Transportation, Inc.;  &ast;

Trism Eastern, d/b/a C.I. Whitten          *
Transfer, Inc.; Tri-State Motor            *
Transit Co.; Aero Body and Truck           *
Equipment, Inc.; Trism Logistics,          *
Inc.; Trism Equipment, Inc.; Trism         *
Transport, Inc.; Trism Transport           *
Services, Inc., as individual entities     *
and as debtors in possession; CIT          *
Group/Business Credit, Inc.; Bed           *
Rock, Inc.,                                *
                                           *
      Appellees.          *

_____

Submitted:  December 11, 2002

Filed:  May 16, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Trism, Inc. and its thirteen subsidiaries (collectively Trism) filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.  About a month later, Trism requested that the bankruptcy court approve an order authorizing the sale of Trism's assets to Bed Rock, Inc. (Bed Rock).  In the order authorizing the sale, the bankruptcy court released Bed Rock, Bed Rock's principal owner and president, Glenn Garrett (Garrett), and CIT Group/Business Credit, Inc. (CIT) from all avoidance liability.  The Official Committee of Unsecured Creditors (Committee) appealed CIT's release to the Bankruptcy Appellate Panel (BAP).  The BAP dismissed the appeal as moot under 11 U.S.C. § 363(m) (2000).  We affirm.

## I.    BACKGROUND

Before bankruptcy, CIT provided Trism with financing.  Garrett participated in Trism's pre-petition financing as a "last out" junior participant with CIT.  As a "last out" participant with CIT, Garrett would not receive any of the amount he financed until CIT recovered the total amount it financed.  CIT and Garrett continued to finance Trism's post-petition operations with the bankruptcy court's approval.

Before filing bankruptcy, Trism sought a party to buy the companies as a going concern.  Shortly after filing bankruptcy, Trism found a buyer, Bed Rock.  Trism and Bed Rock recorded the terms of the purchase in the Trism/Bed Rock Asset Purchase Agreement (Asset Purchase Agreement).  The Asset Purchase Agreement conditioned the sale of Trism's assets upon the bankruptcy court issuing an order absolving Garrett and Bed Rock from any avoidance liability.  Garrett sought to be absolved from avoidance liability because he wanted to credit the financing he provided against Trism's purchase price.

After drafting the Asset Purchase Agreement, Trism requested that the bankruptcy court approve the sale.  Trism's notice of the sale listed Bed Rock as the purchaser of Trism's assets, showed Garrett as Bed Rock's majority shareholder, and observed Garrett was a "last out" participant in Trism's pre-petition and post-petition financing with CIT.  During the hearing on the sale, the bankruptcy court realized it could not absolve Garrett's avoidance liability without also releasing CIT, because of Garrett's "last out" participation.  After a recess to allow the parties to caucus, Bed Rock increased its bid by two million dollars, and the release of CIT was negotiated.

Acknowledging the decision to approve the sale placed the bankruptcy court on the "horns of a dilemma," the bankruptcy court approved the sale of Trism's assets to Bed Rock.  In approving the sale, the bankruptcy court noted (1) Garrett would withdraw his offer if the sale were not approved at that time, and (2) the post-petition financing order terminated at the close of business.  In the order authorizing the sale,

the bankruptcy court concluded Bed Rock purchased Trism's assets in good faith and the sale of assets was in the best interest of creditors. The bankruptcy court's order also released Bed Rock, Garrett, and CIT from avoidance liability, finding "[t]he sale could not be consummated on terms as favorable to [Trism] without protection to [Bed Rock, CIT, and Garrett] from" such liability.

After Bed Rock and Trism consummated the sale, the Committee appealed CIT's release from avoidance liability to the BAP. The BAP dismissed the appeal as moot under 11 U.S.C. § 363(m). On appeal, the Committee contends: (1) the Committee is not seeking to overturn the sale of assets to Bed Rock, (2) section 363(m) does not apply to CIT, and (3) failure of the notice of sale to advise creditors that avoidance claims against CIT were to be released renders section 363(m) inapplicable.

## II.    DISCUSSION
### A.    Scope of Section 363(m)

We review a bankruptcy court's conclusions of law de novo, and factual findings for clear error. In re Paulson, 276 F.3d 389, 391 (8th Cir. 2002). Section 363(m) prevents a modification or reversal of a bankruptcy court's order authorizing the sale of the debtor's assets from affecting the validity of the sale. 11 U.S.C. § 363(m).

Section 363(m) protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale. In re Paulson, 276 F.3d at 392. Section 363(m) further shields third parties who rely upon the bankruptcy court's order from endless litigation. In re Sax, 796 F.2d 994, 998 (7th Cir. 1986). By providing reliability and finality, section 363(m) enhances the value of the debtor's assets sold in bankruptcy. In re Stadium Mgmt. Corp., 895 F.2d 845, 847 (1st Cir. 1990). Section 363(m)'s finality also strikes a balance between the creditor's interest

and the purchaser's interest by producing value for the estate and preventing any modification or reversal of the bankruptcy court's authorization of the sale from affecting the validity of the sale. See In re Wintz Cos., 219 F.3d 807, 811 (8th Cir. 2000). This finality rule "also reflects the inability of courts to supply a remedy once property has left the bankruptcy estate." In re Rodriquez, 258 F.3d 757, 759 (8th Cir. 2001).

The language of section 363(m)[1] moots any challenge to an order approving the sale of assets that satisfies two requirements. First, no party obtained a stay of the sale pending appeal. Cinicola v. Scharffenberger, 248 F.3d 110, 122 (3d Cir. 2001); In re Adamson Co., 159 F.3d 896, 897 (4th Cir. 1998). Second, "reversing or modifying the authorization to sell would affect the validity of the sale or lease." Cinicola, 248 F.3d at 122.

The First Circuit afforded section 363(m) protection to the assumption and assignment of executory contracts in conjunction with a sale of assets. In re Stadium Mgmt., 895 F.2d at 849. In Stadium Management, the buyer's final bid to purchase the Foxborough Stadium assets expressly conditioned the sale upon authorization to assume and assign certain leases. The bankruptcy court issued an order authorizing the sale of the debtor's assets and granting the debtor's motion to assume and assign the leases. The First Circuit noted, without the assumption and assignment, the buyer would not have proceeded with the sale. The First Circuit also noted the motion to assume and assign the leases, and the order approving the sale, were considered

_____

[1]The reversal or modification on appeal of an authorization under sub-section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . *unless such authorization and such sale or lease were stayed pending appeal.*

11 U.S.C. § 363(m) (emphasis added).

together as a package.  Id. at 848.  The court also concluded the assumption and assignment of the lease was an integral part of the order authorizing the sale of the debtor's assets.  Thus, a challenge to the assumption and assignment of the lease would affect the validity of the sale of the estate's assets.  Id. at 849; see also Cinicola, 248 F.3d at 122-26.

We conclude a challenge to a related provision of an order authorizing the sale of the debtor's assets affects the validity of the sale when the related provision is integral to the sale of the estate's assets.  A provision is integral if the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange.  See Cinicola, 248 F.3d at 125-26; In re Stadium Mgmt., 895 F.2d at 849.

### B.    CIT's Release

As the Committee did not procure a stay of the Trism/Bed Rock sale, we must only determine if reversing or modifying the portion of the bankruptcy court's order releasing CIT from avoidance liability would adversely affect the validity of Bed Rock's purchase of Trism.

The Asset Purchase Agreement conditioned the closing of the sale upon the bankruptcy court entering an order providing that Garrett would "have no liability to [Trism's] estate [or the Committee] . . . under 11 U.S.C. §§ 547, 548, 549 or 550." The Asset Purchase Agreement also conditioned the sale upon the bankruptcy court entering an order absolving Garrett "from any cause of action available to [Trism or the Committee] . . . for a preference, fraudulent conveyance, or contribution or participation in the liability of any preference or fraudulent conveyance."

CIT's release from avoidance liability is directly linked to absolving Garrett from liability.  Garrett participated with CIT in Trism's pre-petition and post-petition financing as a "last out" junior participant.  As a "last out" junior participant, Garrett

bore a greater risk of loss than CIT because Garrett would not recover any of the amount he financed until CIT recouped the total amount CIT had financed to Trism. If CIT became liable for an avoided transfer for the amount of financing provided by Garrett, or anything less, Garrett would be adversely affected by the corresponding reduction in his ultimate recovery.

The bankruptcy court also found "[t]he sale could not be consummated on terms as favorable to [Trism] without protection to [Bed Rock, CIT, and Garrett] from successor liability of Trism's creditors . . . and from liability or causes of action under §§ 542, 543, 544, 547, 548, and 549." This finding is clearly supported by the record, and is not clearly erroneous.

CIT's release from avoidance liability is integral to the sale of Trism's assets to Bed Rock. Thus, section 363(m) moots the Committee's challenge to the bankruptcy court's order releasing CIT from avoidance liability.

C.    Section 363(m)'s Protection to Creditor Bidders

The Committee argues section 363(m)'s protections should not apply to CIT because section 363(m) only protects bidders who are not creditors in bankruptcy, citing In re Healthco Int'l, Inc., 136 F.3d 45, 47, 49 (1st Cir. 1998) (holding a settlement of claims for a fraudulent transfer under 11 U.S.C. § 544(b) and for liquidation of assets in a commercially unreasonable matter did not enjoy the protection of section 363(m)) and In re Sun Valley Ranches, Inc., 823 F.2d 1373, 1375 (9th Cir. 1987) (carving out a "narrow exception" from section 363(m) when a creditor is the purchaser of debtor's real estate). We disagree. First, in Healthco, the First Circuit decided that a settlement of two claims held by the debtor's bankruptcy estate did not qualify for section 363(m)'s protection. The settlement was not a "sale" of assets. In re Healthco, 136 F.3d at 47, 49. Second, the Ninth Circuit has since limited the court's conclusion in Sun Valley Ranches situations to "where real property is sold to a creditor who is a party to the appeal," and no exception to

section 363(m) applies to the sale of business assets. <u>In re Filtercorp, Inc.</u>, 163 F.3d 570, 577 (9th Cir. 1998). Finally, we do not find any support for such an exception in the plain language of section 363(m). Section 363(m) protects a good faith purchaser and lists no other exceptions or any other qualifications to receive the protection of section 363(m).

### D. Notice of the Sale of Trism's Assets

The Committee argues section 363(m) does not apply to CIT's release from avoidance liability because the notice of sale did not list CIT's release as a term of the sale. As the Committee did not raise this issue before the BAP, this issue is waived. <u>See</u> <u>In re Rodriquez</u>, 258 F.3d at 759.

## III. CONCLUSION

For the foregoing reasons, we affirm the BAP's dismissal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.